```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

_____

```
                                  ✗
MAURICE FRAZIER,                  ✗
                                  ✗
          Movant,                 ✗
                                  ✗     Cv. No. 12-2886-STA-dkv
vs.                               ✗     Cr. No. 06-20430-STA
                                  ✗
UNITED STATES OF AMERICA,         ✗
                                  ✗
          Respondent.             ✗
                                  ✗
```

_____

```
                   ORDER TO MODIFY THE DOCKET
       ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
          ORDER DENYING CERTIFICATE OF APPEALABILITY
         ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                             AND
   ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL
```

_____

Before the Court is the Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed by Movant Maurice Frazier, Bureau of Prisons register number 21406-076, an inmate at the United States Penitentiary — Victorville in Adelanto, California. (ECF No. 1.) For the reasons stated below, the Court DENIES Movant's § 2255 motion.

I.        **BACKGROUND**

          **A.    Criminal Case Number 06-20430**

On November 28, 2006, a federal grand jury returned a single-count indictment charging Frazier, a convicted felon, with

1

possession of a Lorcin, Model L25, .25 caliber pistol on or about March 14, 2006, in violation of 18 U.S.C. § 922(g).[1] On December 18, 2008, the grand jury returned an eleven-count superseding indictment against Frazier.[2] The first count charged that, on or about February 11, 2006, Frazier robbed A&R Bar-B-Que, in violation of 18 U.S.C. § 1951. The third count charged that, on or about February 15, 2006, Frazier robbed a Family Dollar, in violation of 18 U.S.C. § 1951. The fifth count charged that, on or about February 19, 2006, Frazier robbed a McDonald's, in violation of 18 U.S.C. § 1951. The seventh count charged that, on or about March 3, 2006, Frazier robbed a Sonic, in violation of 18 U.S.C. § 1951. The ninth count charged that, on or about March 13, 2006, Frazier robbed the Memphis Plaza Hotel, in violation of 18 U.S.C. § 1951. Counts 2, 4, 6, 8, and 10 charged Frazier with using and carrying a firearm during and in relation to the robberies charged in Counts 1, 3, 5, 7, and 9, respectively, in violation of 18 U.S.C. § 924(c). The eleventh count realleged Count 1 of the original Indictment.

The factual basis for these charges is summarized in the presentence report ("PSR"):

### Counts One and Two

5.   At approximately 8:00 p.m. on February 11,

---

[1]   Indictment, United States v. Frazier, No. 06-20430-STA (W.D. Tenn.), ECF No. 1.

[2]   1st Superseding Indictment, id., ECF No. 49.

2

2006, a male, later identified as **Maurice Frazier**, entered A&R Barbecue at 3530 Ramill in Memphis, Tennessee, ordered dinner, and left. A few minutes later, **Frazier** re-entered the store, armed with a black semi-automatic handgun. **Frazier** pointed the handgun at the employees and demanded money. After collecting money from the registers, **Frazier** asked where the safe was. A store employee took **Frazier** to the safe in the back office. **Frazier** then left the store with the hand safe. He took approximately $3,000 in cash.

6.   Alice Warner, one of the store employees, stated that **Frazier** entered the store, grabbed her by the arm, and told her that he wanted her to open the safe. She told **Frazier** that she had no way to get the money from the safe. According to Warner, another employee, Tiesh Withers, put money from the registers into a sack and handed it [to] Warner to give to **Frazier**. Another employee, Roy Sullivan, came out of the kitchen and asked Frazier not to shoot. Roy retrieved the safe from the back of the restaurant and gave it to **Frazier**. Warner indicated that **Frazier** then picked up the safe, told them to get on the floor, and left.

7.   Withers indicated that she was leaning on the register when she saw **Frazier** walking Warner back to where she was. Withers noticed that **Frazier** had a gun and realized that they were being robbed. According to Withers, **Frazier** kept asking for the safe, but Withers told him that they did not have one. Withers indicated that **Frazier's** voice changed and he started getting meaner. He was constantly asking about the safe. Withers stated that she went to the register and put the money into a bag for **Frazier**. She handed the bag to Warner while **Frazier** was still asking about the safe. According to Withers, Sullivan walked up from the back of the store and saw that they were being robbed. Sullivant then went to the back of the store and got the safe. **Frazier** picked the safe up off the floor, told them to get on the floor, and left. Withers identified **Frazier** in a photo line-up.

8.   While being interviewed about an unrelated incident, **Frazier** gave a statement of admission about committing this robbery. He indicated that he was armed with an automatic .380 caliber pistol. According to

3

**Frazier**, he took about $1,500 to $1,600 during the robbery. **Frazier** stated that he participated in the robbery "to get money for a place to stay and buy food and stuff." He also indicated that he was sorry that "these things happened to the victims and that this whole thing turned out the way it did."

### Counts Three and Four

9.    At approximately 8:16 p.m. on February 15, 2006, Family Dollar Store, located at 3514 Raleigh Millington Road in Memphis, was robbed. **Frazier** admitted committing this robbery while being interviewed about a similar incident. According to store employee, Emmanuel Fowler, he was sweeping outside the store when **Frazier** asked if they still had Valentine's Day cards available. Fowler directed him inside the store. According to Fowler, seconds later, he saw **Frazier** pointing a gun at Martin Hurley, the manager. Fowler then ran for help. Hurley advised that **Frazier** demanded that he get onto the floor after the money was removed out of the register. **Frazier** then forced Hurley to take him to the safe. When Hurley advised that he had to get the code out of his cell phone, **Frazier** moved him into the office. While still holding Hurley at gunpoint, **Frazier** had Hurley place the deposit bag and the till tray into a Family Dollar bag. **Frazier** then took Hurley's phone and left on foot with an unknown amount of money.

10.    During an interview with investigators, **Frazier** advised that he participated in the robbery because he "needed cash." He estimated that he received "maybe a hundred and something dollars."

### Counts Five and Six

11.    McDonald's, located at 2200 Covington Pike in Memphis, was robbed by **Frazier** at approximately 10:30 p.m. on February 19, 2006. According to Tabitha Stegall, the manager on duty, **Frazier** placed a food order at the restaurant's counter. After receiving his food order from Devin Hines, **Frazier** walked back outside. Stegall stated that they thought **Frazier** was going outside, so they all went to the back. Stegall advised that **Frazier** walked back to where they were, pointed a gun at them, and told them to give him the

4

money. Stegall told **Frazier** that she was pregnant and not to shoot her. According to Stegall, **Frazier** responded that he would not hurt anyone and that they should do as they were told. **Frazier** then ordered Stegall and another employee to lie on the ground while he made Hines get the money from the drive-through register. When he asked for the surveillance tape, Stegall told him that she did not have the key. **Frazier** tried to break the plexiglass case that held the VCR, but it would not break. Stegall indicated that **Frazier** told them all to go into the back of the restaurant. He shot at the surveillance monitor twice and ran out of the store.

12.  During an interview with investigators in connection with a similar incident, **Frazier** admitted committing this robbery. **Frazier** advised that he participated in the robbery because he "needed cash." He estimated that he received approximately $800 from the robbery.

13.  Two spent .380 caliber casings were recovered from the scene.

### Counts Seven and Eight

14.  Sonic Drive-In, located at 3332 Overton Crossing in Memphis, was robbed by **Frazier** on March 3, 2006. **Frazier** admitted committing this robbery while being interviewed about a similar incident. According to Kendra Grayson, the manager at Sonic, **Frazier** entered the store through the rear door that was opened while a truck was being unloaded. According to Grayson, **Frazier** came up to her, put the gun in her side, and told her to give him the money. Grayson froze, and **Frazier** walked past her and grabbed one of the carhops, who had money in her apron. When **Frazier** told the carhop to give him her money, she pushed him. However, when the carhop saw **Frazier's** gun, she ran. Grayson then told the other employees to run. According to Grayson, **Frazier** shot out two surveillance monitors. Grayson indicated that another employee came out of the walk-in when he heard the shots. **Frazier** grabbed him and told him to give him the money because "the bitches" would not give the money to him. The employee gave **Frazier** the money that was in a drawer but not the money that was in the safe. **Frazier** then ran out the

back door. Grayson stated that **Frazier** took $451 in cash.

15.   Another employee, Dioulasso Bobo, indicated that **Frazier** entered the store through the back door and put a gun to an employee's stomach. According to Bobo, the employee pushed **Frazier** back because they thought it was a joke. Bobo walked out the front door with an order. When she realized that **Frazier** was robbing them, she told a customer to call the police.

16.   During an interview with investigators, **Frazier** advised that he participated in the robbery because he "needed cash."

### Counts Nine and Ten

17.   At approximately 12:45 a.m. on March 13, 2006, **Frazier** robbed Memphis Plaza Hotel, located at 6101 Shelby Oaks in Memphis. **Frazier** was developed as a suspect from a previous incident and gave a statement admitting his participation in this robbery. Zachary Morrow advised that he was at the desk in the back office when **Frazier** jumped the counter. Morrow slammed the door in **Frazier's** face; however, **Frazier** kept pushing the door open, so Morrow let the door go. **Frazier** then entered the back office with a gun and demanded money. Morrow took **Frazier** to the front, where Morrow opened the drawer that contained the money. When **Frazier** demanded a bag, Morrow went to the back and retrieved a garbage bag. **Frazier** told Morrow to put the money into the bag, and Morrow complied. According to Morrow, **Frazier** then told him to go into a closet, get on his knees, and count to ten. **Frazier** closed the closet door, jumped over the counter, and left. According to Morrow, **Frazier** took $500 in cash. Morrow identified **Frazier** in a photo line-up.

18.   During an interview with investigators, **Frazier** admitted that he possessed a .22 automatic handgun during the robbery. He indicated that, although the employee told him that there was about $500, he received between $200 and $300. When asked why he participated in the robbery, **Frazier** responded, "I needed money and every time I did a robbery I went and got a motel room because I needed a place to stay."

### Count Eleven

19.   At approximately 5:50 p.m. on March 14, 2006, **Frazier** robbed Just Phones, located at 4570 Raleigh Lagrange in Memphis. According to George Ingram, who was the manager on duty, he was at the front counter when **Frazier** entered the store pointing a gun and saying, "Give me that money." As Ingram backed up, **Frazier** jumped over the counter and again asked for the money. When **Frazier** took Ingram to the back office, he saw Cartilious Tanksley, another employee. **Frazier** then made Ingram and Tanksley get on the floor. Ingram told Tanksley to give the money to **Frazier**, and he did. At that point, **Frazier** pointed the gun at Ingram and asked if that was all the money. Ingram responded that it was. **Frazier** walked Ingram to the front register and made him open it. Ingram took the money out of the register and put it in a plastic bag. **Frazier** walked Ingram to the back of the store, where he took Ingram's diamond horseshoe ring, valued at $800, and a gold bracelet, valued at $99. **Frazier** also made Ingram give him the tape from the surveillance camera. After **Frazier** made Ingram return to the back, he let; however, Ingram went after him with his gun. According to Ingram, he saw **Frazier** running to the right side of the building toward the woods and yelled at him to stop and drop the money. Ingram advised that **Frazier** stopped, turned around, and pointed his gun at Ingram, so Ingram started shooting at **Frazier**. He stated that he fired three shots with a Ruger 9mm handgun. **Frazier** changed direction and ran toward the street. Ingram indicated that he yelled at **Frazier**, "Stop. Don't make me kill you." **Frazier** dropped the bag and a hat and wig that he was wearing and ran. Ingram picked up the items, returned to the store, and called the police. When the officers arrived, Ingram provided a description of **Frazier**. According to Ingram, the officers located **Frazier** within 30 or 45 minutes, and Ingram identified him as the robber. Ingram indicated that the bag that he recovered from **Frazier** contained $879.

20.   Tanksley advised that he was in the back of the store when he saw **Frazier** jump over the counter on the surveillance television. **Frazier** then brought Ingram to the back of the store at gunpoint. According

to Tanksley, **Frazier** pointed the gun at them and kept yelling, "Get on the ground" and asking where the money was. Ingram went to the cash drawer and gave the money to **Frazier**. Tanksley indicated that **Frazier** noticed the surveillance camera and tried to shoot it, but his gun was jammed. **Frazier** told Tanksley to take off his shoes and go to the back of the store. Tanksley complied and got behind a couch in the back room. He looked up and saw that Ingram was there also. Tanksley stated that Ingram told him to stay in the room and left. While Tanksley was trying to call 911, he heard two or three shots fired.

21.   Officers located **Frazier** hiding behind a shed. He led investigators to the location where he hid his firearm.

22.   During an interview with investigators, **Frazier** admitted that he used a handgun during the robbery. He stated that he needed money to rent a place to stay since he did not have anywhere to go.

23.   **Frazier's** firearm is described as a Lorcin pistol, Model L25, .25 caliber, serial number 333820. According to a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the firearm was not manufactured in Tennessee, and, therefore, at some point traveled in interstate and/or foreign commerce.

24.   The investigation revealed that **Frazier** was a convicted felon.

### Offense Conduct Not Included as Relevant Conduct

25.   At approximately 5:50 p.m. on February 7, 2006, Just Phones, located at 4570 Raleigh Lagrange in Memphis, was robbed by **Frazier**. While being interviewed about similar incidents, **Frazier** admitted his participation in the robbery. According to George Ingram, the manager, **Frazier**, who had a hood over his head and a bandanna across his face, entered the store, pointed a handgun at Ingram's chest, and stated, "You already know what time it is." When Ingram moved back to the second room, **Frazier** jumped the counter and asked, "Where's the money?" **Frazier** grabbed the money off Ingram's desk when Ingram showed it to him.

8

According to Ingram, **Frazier** put the money into a bag and told Ingram to get down and take off his shoes. **Frazier** then told Ingram to get up and took his gold chain. Ingram indicated that **Frazier** told him to go to another room in the back and close the door. Ingram identified **Frazier** in a photo line-up. According to Ingram, **Frazier** took $3,000 in cash and his gold chain.

26.   Family Dollar Store, located at 2912 Coleman in Memphis was robbed by two males at approximately 6:30 p.m. on March 5, 2006. Approximately $762 in cash was taken. During the robbery, one of the males forced Cashina Fifer to open her register at gunpoint. The other male went to the back of the store and made Sheila Prescott open the safe. After getting the money, the males ran out of the store. Terry Austin was arrested trying to leave the area. He was identified by the victims. During an interview with investigators, Austin indicated that he did not know the name of the other suspect. During an interview with investigators about a similar incident, **Frazier** admitted his involvement in this robbery.

(PSR ¶¶ 5-26.)

A jury trial commenced on May 18, 2009, and, on May 26, 2009, the jury returned a guilty verdict on Counts 3, 4, 7, 8, 9, 10, and 11 of the Superseding Indictment.[3] The jury continued to deliberate and, on May 27, 2009, the jury returned a guilty verdict on Counts 1, 2, 5, and 6 of the Superseding Indictment.[4] The Court conducted a sentencing hearing on September 16, 2009, at which Frazier was sentenced to a term of imprisonment of one thousand five hundred twenty-four (1524) months, or one hundred

---

[3]     Min. Entry, <u>United States v. Frazier</u>, No. 06-20430-STA (W.D. Tenn.), ECF No. 73; Min. Entry, <u>id.</u>, ECF No. 74; Min. Entry, <u>id.</u>, ECF No. 77; Min. Entry, <u>id.</u>, ECF No. 80; Min. Entry, <u>id.</u>, ECF No. 81; Min. Entry, <u>id.</u>, ECF No. 82.

[4]     Min. Entry, <u>id.</u>, ECF No. 83; Jury Verdict, <u>id.</u>, ECF No. 84.

twenty-seven (127) years, to be followed by a three-year period of supervised release.[5] Judgment was entered on September 28, 2009.[6] The Sixth Circuit Court of Appeals affirmed. <u>United States v. Frazier</u>, 414 F. App'x 782 (6th Cir. 2011), *cert. denied,* ___ U.S. ___, 132 S. Ct. 193, 181 L. Ed. 2d 100 (2011).

---

[5]      Min. Entry, <u>id.</u>, ECF No. 99.

Frazier was sentenced to concurrent terms of 240 months on Counts 1, 3, 5, 7, and 9, to be served consecutively to 84 months on Count 2 and consecutive to consecutive terms of 300 months on Counts 4, 6, 8, and 10. Frazier also received a concurrent sentence of 180 months on Count 11. <u>Id.</u>

The offense level for Count 1 was calculated as follows: Pursuant to § 2B3.1(a) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for robbery is 20. Frazier received a two-point enhancement because a person was physically restrained to facilitate the commission of the offense or to facilitate escape, U.S.S.G. § 2B3.1(b)(4)(B), resulting in an adjusted offense level of 22. The offense level for Counts Three, Five, and Nine was calculated in the same manner. The adjusted offense level for Count 7 was 20, which is the base offense level for robbery.

The adjusted offense level for Count 11 was calculated as follows: Pursuant to U.S.S.G. § 2K2.1(a)(2), the base offense level for unlawful possession of a firearm is 24 if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. Frazier received a four-point enhancement because he possessed the firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6), resulting in an adjusted offense level of 28.

The combined offense level was calculated by assigning one unit to Count 11, the count having the highest adjusted offense level, and one-half unit to each of Counts 1, 3, 5, 7, and 9, for a total of 3.5 units. The adjusted offense level of 28 was increased by four levels, U.S.S.G. § 3D1.4, for a total offense level of 32 on those counts.

However, Frazier also qualified as an armed career criminal because of his prior convictions for Robbery (PSR ¶ 81), Robbery with a deadly weapon (¶ 87), two convictions for aggravated robbery (¶¶ 88-89), and aggravated assault (¶ 91). Pursuant to U.S.S.G. § 4B1.4(b)(3)(A), the total offense level for Counts 1, 3, 5, 7, 9, and 11 was 34. Given his criminal history category of VI, the guideline sentencing range for these counts was 262-327 months.

In addition, Frazier was subject to mandatory minimum terms of imprisonment of 7 years on Count 2 and 25 years on Counts 4, 6, 8, and 10, with each sentence to run consecutive to each other and to the sentence imposed on Counts 1, 3, 5, 7, 9, and 11.

[6]      J., <u>United States v. Frazier</u>, No. 06-20430-STA (W.D. Tenn.), ECF No. 100.

**B.    Case Number 12-2886**

On October 9, 2012, Frazier filed his *pro se* § 2255 Motion. (ECF No. 1.) In that Motion, Frazier raises the following issues:

1.    Whether his attorney rendered ineffective assistance, in violation of the Sixth Amendment (<u>id.</u> at 4-5);

2.    Whether the venue was improper because possession of a firearm is no longer a federal crime (<u>id.</u> at 5-7);

3.    Whether the evidence was insufficient to sustain his conviction for the McDonald's robbery because no witness identified him (<u>id.</u> at 7-8); and

4.    Whether the evidence was insufficient to sustain his conviction for the McDonald's robbery because there was no physical evidence linking him to the crime (<u>id.</u> at 8-9).

The § 2255 Motion was unsigned and contained a note that Movant intended to submit a legal memorandum that he was unable to complete due to his placement in a Special Housing Unit. (<u>Id.</u> at 13.)

In an order issued on January 16, 2013, the Court directed Frazier to sign the § 2255 Motion and to file his legal memorandum within thirty (30) days. (ECF No. 2.) On February 11, 2013, the Clerk docketed the signature page for Movant's § 2255

11

Motion. (ECF No. 4-2.)[7]

On March 4, 2013, Movant filed his Supplimental [sic] Brief in Support of Motion Under § 2255. (ECF No. 5.)[8] Rather than providing legal argument in support of the issues in his § 2255 Motion, this filing presents the following, additional issue:

5.   Whether the Court erred in the admission of testimony, not of an expert, but stated as such, which confused the jury and its verdict (id. at 2-5).

This filing is both late, having been filed beyond the thirty days specified by the January 16, 2013, order, and likely time barred. In the interest of judicial economy, however, the Court has chosen to grant leave to amend and to address this new issue on the merits without requiring the Government to respond.

**II.    THE LEGAL STANDARDS**

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is

---

[7]   In that filing, Frazier stated that he "will not [sic] proceed to complete the Amendment approved by this Court, with all due speed possible." (ECF No. 4.) The Court did not grant leave to amend but, instead, granted leave to file a legal memorandum. Movant also did not seek an extension of time to file his legal memorandum.

[8]   The Clerk has docketed three copies of Movant's supplement. The Clerk is directed to remove pages 6-15 of the .pdf document, which are redundant.

otherwise subject to collateral attack, may move the
court which imposed the sentence to vacate, set aside
or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege

either (1) an error of constitutional magnitude; (2) a sentence

imposed outside the statutory limits; or (3) an error of fact or

law that was so fundamental as to render the entire proceeding

invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir.

2006) (internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See*

Sunal v. Large, 332 U.S. 174, 178, 67 S. Ct. 1588, 1590, 91 L.

Ed. 1982 (1947). "[N]onconstitutional claims that could have been

raised on appeal, but were not, may not be asserted in collateral

proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10, 96 S. Ct.

3037, 3044 n.10, 49 L. Ed. 2d 1067 (1976). "Defendants must

assert their claims in the ordinary course of trial and direct

appeal." Grant v. United States, 72 F.3d 503, 506 (6th Cir.

1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective
> assistance of counsel, then relief under § 2255 would
> be available subject to the standard of Strickland v.
> Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d
> 674 (1984). In those rare instances where the defaulted
> claim is of an error not ordinarily cognizable or
> constitutional error, but the error is committed in a
> context that is so positively outrageous as to indicate
> a "complete miscarriage of justice," it seems to us
> that what is really being asserted is a violation of
> due process.

Id.

13

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. El-Nobani v. United States, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); Peveler v. United States, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998).

"[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." Jones v. United States, 178 F.3d 790, 796 (6th Cir. 1999); see also DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996) (same).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for

14

the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996); see also Blackledge v. Allison, 431 U.S. 63, 74 n.4, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing

15

of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion."). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

**III.    ANALYSIS OF MOVANT'S CLAIMS**

**A.   Ineffective Assistance of Counsel (Claim 1)**

In his first issue, Movant argues that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, by failing to argue that there was no proof that the interstate commerce element of the various offenses had been satisfied. (ECF No. 1 at 4.) Specifically, Movant asserts that there was "no substantial impact on interstate commerce proven. Law supports no commerce found on less than $1200! Most crimes were under this limit. Counsel did not argue venue issue." (Id.) It appears that Movant is arguing that there was no federal jurisdiction over the robbery counts (Counts 1, 3, 5, 7, and 9) because the amount of funds obtained in each robbery was less than $1200.

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate

16

that "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S. Ct. 2052." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[9] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Srickland, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

_____

[9]     "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697, 104 S. Ct. at 2069.

<u>Id.</u>, at 687, 104 S. Ct. 2052." <u>Richter</u>, ___ U.S. at ___, 131 S.
Ct. at 787-88; *see also* <u>id.</u> at ___, 131 S. Ct. at 791-72 ("In
assessing prejudice under <u>Strickland</u>, the question is not whether
a court can be certain counsel's performance had no effect on the
outcome or whether it is possible a reasonable doubt might have
been established if counsel acted differently. . . . The
likelihood of a different result must be substantial, not just
conceivable.") (citations omitted); <u>Wong v. Belmontes</u>, 558 U.S.
15, 27, 130 S. Ct. 383, 390-91, 175 L. Ed. 2d 328 (2009) (per
curiam) ("But <u>Strickland</u> does not require the State to 'rule out'
[a more favorable outcome] to prevail. Rather, <u>Strickland</u> places
the burden on the defendant, not the State, to show a
'reasonable probability' that the result would have been
different.").

"Surmounting <u>Strickland</u>'s high bar is never an easy task."
<u>Padilla v. Ky.</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 1385 (2010).

> An ineffective-assistance claim can function as a way
> to escape rules of waiver and forfeiture and raise
> issues not presented at trial, and so the <u>Strickland</u>
> standard must be applied with scrupulous care, lest
> "intrusive post-trial inquiry" threaten the integrity
> of the very adversary process the right to counsel is
> meant to serve. <u>Strickland</u>, 466 U.S., at 689-690, 104
> S. Ct. 2052. Even under *de novo* review, the standard
> for judging counsel's representation is a most
> deferential one. Unlike a later reviewing court, the
> attorney observed the relevant proceedings, knew of
> materials outside the record, and interacted with the
> client, with opposing counsel, and with the judge. It
> is "all too tempting" to "second-guess counsel's
> assistance after conviction or adverse sentence." <u>Id.</u>,
> at 689, 104 S. Ct. 2052; *see also* <u>Bell v. Cone</u>, 535

U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914
(2002); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372, 113 S.
Ct. 838, 122 L. Ed. 2d 180 (1993). The question is
whether an attorney's representation amounted to
incompetence under "prevailing professional norms," not
whether it deviated from best practices or most common
custom. <u>Strickland</u>, 466 U.S., at 690, 104 S. Ct. 2052.

<u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 788.

The robbery counts arose under the Hobbs Act, 18 U.S.C. §

1951(a), which provides as follows:

> Whoever in any way or degree obstructs or delays
> or affects commerce or the movement of any article or
> commodity in commerce, by robbery or extortion or
> attempts or conspires to do so, or commits or threatens
> physical violence to any person or property in
> furtherance of a plan or purpose to do anything in
> violation of this section shall be fined under this
> title or imprisoned not more than twenty years, or
> both.

On direct appeal, Movant argued that, to support federal

jurisdiction over both the Hobbs Act and the firearms counts, the

Government was required to show that the offenses had a

substantial effect on interstate commerce. The Court of Appeals

rejected that argument on the merits, stating as follows:

> Frazier robbed five Memphis, Tennessee businesses
> in February and March 2006. He does not dispute that he
> committed the robberies, challenging only the
> interstate commerce element of the convictions. During
> Frazier's jury trial, the government presented evidence
> of the interstate nexus of each offense. First, Frazier
> took between $2,400 and $2,700 from the A & R
> Bar-B-Que, which sold pork originating in Mississippi,
> for which the restaurant sent payment to an address in
> Georgia. Second, Frazier robbed the cash register of a
> Family Dollar Store, which sold goods originating from
> out of state. Third, Frazier robbed a McDonald's
> restaurant, which ordered supplies from a national
> purchasing company. Fourth, Frazier robbed a Sonic

19

restaurant, which sold products ordered from out-of-
state vendors and delivered from a Mississippi
distribution center. And fifth, Frazier took $300 from
the Memphis Plaza Hotel, which catered to out-of-state
guests and used a credit card machine. Frazier was
apprehended during a sixth robbery, during which his
gun, manufactured in California, was recovered.

         .  .  .  .

    We review de novo Frazier's claim that the Hobbs
Act and 18 U.S.C. § 924(c) convictions require proof
that the offenses had a substantial effect on
interstate commerce. *See* <u>United States v. Davis</u>, 473
F.3d 680, 681 (6th Cir. 2007). The Hobbs Act provides
that "[w]hoever in any way or degree obstructs, delays,
or affects commerce or the movement of any article or
commodity in commerce, by robbery ... shall be fined
under this title or imprisoned...." 18 U.S.C. §
1951(a). In order to prevail under the Hobbs Act, "the
Government must prove two elements: (1) interference
with interstate commerce (2) in the course of a
substantive criminal act." <u>United States v. Ostrander</u>,
411 F.3d 684, 691 (6th Cir. 2005). Title 18 U.S.C. §
924(c)(1)(A) provides for additional punishment for
"any person who, during and in relation to any crime of
violence ... uses or carries a firearm, or who, in
furtherance of any such crime, possesses a firearm."

    This court has repeatedly held that the Hobbs Act
requires the government to prove only that the offense
had a *de minimis* effect on interstate commerce to
satisfy the jurisdictional requirement. <u>United States
v. Baylor</u>, 517 F.3d 899, 901–02 (6th Cir. 2008); <u>Davis</u>,
473 F.3d at 681–83. Our previous published opinions
require us to reject Frazier's challenge to the *de
minimis* standard. Because Frazier's challenge to his
convictions for use of a firearm during a crime of
violence under 18 U.S.C. § 924(c) is predicated on the
invalidity of his Hobbs Act convictions, it also fails.

    Frazier did not raise in his brief the issue of
whether the government offered sufficient evidence at
trial to satisfy the *de minimis* standard. Had he done
so, we would find that there was sufficient evidence to
establish the interstate nexus required for each of the
charges in this case. Each victim purchased supplies
from out of state or provided accommodations to out-of-

state guests. Thus, a rational juror could have found that Frazier's actions had a *de minimis* effect on interstate commerce, and that is all that is required. *See, e.g.,* United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999) (government met burden where stores robbed did substantial business in products originating from out of state).

United States v. Frazier, 414 F. App'x at 782-84. No basis exists for revisiting this determination.

Because the Court of Appeals has concluded that the interstate commerce requirement has been satisfied, trial counsel was not deficient in failing to raise the issue and Movant suffered no prejudice.

Appellate counsel was not ineffective because he raised the issue suggested by Movant.[10] In his appellate brief, Movant cited the concurring opinion in United States v. Wang, 222 F.3d 234, 246 (6th Cir. 2000), which argued that a robbery of restaurant owners in their home that netted $1200 in restaurant receipts was insufficient to establish even a *de minimis* effect on interstate commerce. The majority did not adopt this reasoning and, instead, reversed the defendant's conviction, holding that a showing of a substantial connection between the victim and interstate commerce is required where the robbery victim is an individual rather than a business engaged in interstate commerce.  Id. at 238-40. Thus, appellate counsel made the precise argument urged by Movant,

---

[10]     Br. of the Def./Appellant at 3, 11-21, United States v. Frazier, No. 09-6186 (6th Cir. Feb. 22, 2010).

21

which the Court of Appeals implicitly rejected when it affirmed his convictions. Movant cannot establish either deficient performance or prejudice.

The first issue is without merit and is DISMISSED.

**B.    Federal Jurisdiction Over the § 922(g) Count (Claim 2)**

In his second issue, Movant argues that "[p]ossession of [a] firearm, whether or not by prior felon[,] is not federal crime, thus no venue to prosecute." (ECF No. 1 at 5; *see also* id. ("Possession of firearm is not a federal crime any longer, no venue.") Movant also argues that his appellate counsel was ineffective in failing to raise the issue. (Id. at 6.) Although this issue is not clearly presented, it appears that Movant is challenging his conviction on the § 922(g) count (Count 11) as violative of the Second Amendment.

In District of Columbia v. Heller, 554 U.S. 570, 595, 128 S. Ct. 2783, 2799, 171 L. Ed. 2d 637 (2008), the Supreme Court held that the Second Amendment to the United States Constitution protects the right of individuals to keep and bear arms. The Supreme Court noted, however, that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited. . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."

<u>Id.</u> at 626, 128 S. Ct. at 2816-17. Applying that language, the
Court of Appeals has held that 18 U.S.C. § 922(g), which bars
convicted felons from possessing firearms, does not violate the
Second Amendment. <u>United States v. Whisnant</u>, 391 F. App'x 426,
430 (6th Cir. 2010); <u>United States v. Khami</u>, 362 F. App'x 501,
507-08 (6th Cir. 2010); <u>United States v. Frazier</u>, 314 F. App'x
801, 807 (6th Cir. 2008).

Appellate counsel was not ineffective in failing to raise
this issue and Movant suffered no prejudice. The second issue is
without merit and is DISMISSED.

### C.   The Sufficiency of the Evidence to Support Counts Five and Six (Claims 3 & 4)

In his third issue, Movant appears to argue that the
evidence is insufficient to support his convictions on Counts 5
and 6, which arise from the McDonald's robbery, because he was
not identified. (ECF No. 1 at 7.) Movant avers that "[t]here is
no one on record who identified Petitioner as criminal, but
someone informed manager who called him by name, (coaching?) [N]o
motion for acquittal of this count." (<u>Id.</u>) Movant contends that
his attorney was ineffective in failing to raise this issue.
(<u>Id.</u>)

In his fourth issue, Movant claims that there was no
physical evidence to support his conviction for the McDonald's
robbery. (<u>Id.</u> at 8.) He emphasizes the absence of "prints, DNA,
evidence." (<u>Id.</u>) Movant contends that his attorney was

ineffective in failing to move for a judgment of acquittal on these counts. (Id.)

The legal standard for reviewing a challenge to the sufficiency of the evidence in a federal criminal case is as follows:

> When reviewing a criminal conviction for sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "All reasonable inferences and resolutions of credibility are made in the jury's favor." United States v. Washington, 702 F.3d 886, 891 (6th Cir. 2012). A convicted defendant bears "a very heavy burden" to show that the government's evidence was insufficient. United States v. Kernell, 667 F.3d 746, 756 (6th Cir. 2012). As is generally the case, circumstantial evidence alone may be sufficient to support a conviction. United States v. Graham, 622 F.3d 445, 448 (6th Cir. 2010).

United States v. Tragas, 727 F.3d 610, 617 (6th Cir. 2013).

At trial, Tabitha Stegall, the McDonald's manager, testified that she was unable to make a positive identification of the robber from a photo lineup. (Tr. 151, 154, United States v. Frazier, No. 06-20430-STA (W.D. Tenn.), ECF No. 112.) Devin Hines, who was also working that night, told the police the night of the robbery that he would not be able to identify the robber. (Id. at 164-65.) Hines was able to identify Frazier as the robber at trial. (Id. at 165.) Hines explained that he told the police the day of the robbery that he could not identify the perpetrator "[b]ecause I had so much emotions and stuff running through me, I

just wasn't focused on that." (Id. at 166.) Memphis Police
Detective Walter Davidson testified that he interviewed Frazier
on March 15, 2006. (Tr. 487-88, 492-93, United States v. Frazier,
No. 06-20430-STA (W.D. Tenn.), ECF No. 113.) During that
interview, Frazier gave a detailed confession to the McDonald's
robbery. (Id. at 529-34.)

The testimony of Hines identifying Frazier as the person who
committed the McDonald's robbery, and Frazier's written statement
confessing to the robbery, are more than sufficient to allow a
reasonable juror to return a guilty verdict on Counts 5 and 6.
Counsel was not deficient for failing to move for a judgment of
acquittal on this basis, and Movant suffered no prejudice.

The third and fourth issues are without merit and are
DISMISSED.

### D.   The Allegedly Improper Expert Testimony (Claim 5)

In his fifth issue, Movant argues that the Court erred in
admitting the opinion testimony of Benny Allen, an interstate
nexus specialist with the Bureau of Alcohol, Tobacco, Firearms
and Explosives. (ECF No. 5 at 2-5.) This issue is not cognizable
in a § 2255 motion because it is properly raised on direct
appeal. See supra pp. 13-14. An error in the admission of
evidence is a nonconstitutional claim that must be raised on
direct appeal. Phillips, 229 F.3d at 552 (challenge to jury
instructions procedurally defaulted due to failure to raise on

direct appeal); Arana v. United States, Nos. 03-CV-73023, 95-CR-80282, 2009 WL 454700, at *4 (E.D. Mich. Feb. 24, 2009) (admission of evidence). In this case, Movant does not attribute his procedural default to the ineffective assistance of counsel.

Even if that were not the case, the issue is meritless. Defense counsel's *voir dire* established that Allen was relatively new to nexus identification and had not completed his training. (Tr. 609-12, United States v. Frazier, No. 06-20430-STA (W.D. Tenn.), ECF No. 114.) At the conclusion of his *voir dire*, defense counsel stated that "I'm satisfied that Agent Allen is a qualified — has specialized training and knowledge to testify in this matter." (Id. at 612.) "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066.

Movant cannot show that he was prejudiced by his attorney's decision not to challenge the qualifications of Allen. Allen testified that the firearm involved in this case was not manufactured in Tennessee and, therefore, had moved in interstate commerce at some time. (Id. at 612-13.) Allen determined that the firearm was manufactured in California. (Id. at 616-17.) Movant does not dispute the substance of Allen's testimony. Had the Court ruled that Allen was not entitled to testify to his opinion, the Government could have called someone else to testify

26

to the same facts.

The fifth issue is without merit and is DISMISSED.

Because every issue presented by Movant has been dismissed, his motion pursuant to 28 U.S.C. § 2255 is DENIED. Judgment shall be entered for the United States.

## IV.        APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

A COA may issue only if the movant has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (internal quotation marks & citation omitted); *see also* Henley v. Bell, 308 F. App'x

27

989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337, 123 S. Ct. at 1039; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, for the reasons previously stated, the issues raised by Movant lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma*

*pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[11]

IT IS SO ORDERED this **20th** day of December, 2013.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[11]    If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.